IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BRIAN LEE PRITCHARD, )<br>  )<br>       Plaintiff, )<br>  )<br>v. )<br>  )<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>  )<br>       Defendant. ) | CIVIL ACTION NO. 3:10cv321-WC |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Brian Lee Pritchard applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*, and supplemental security income payments under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* His applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled from the alleged onset date of April 13, 2007, through the date of the decision. Tr. 25. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*,

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #12); Def.'s Consent to Jurisdiction (Doc. #13).  Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]     A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-one years old at the time of the hearing before the ALJ. Tr. 30. Plaintiff completed the twelfth grade. Tr. 30. Plaintiff's past relevant work experience was as a "finish lot coordinator," "URB operator," and stocker. Tr. 24; Tr. 49.[5] Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had "engaged in substantial gainful activity for a brief period of time after April 13, 2007," but that Plaintiff left his job in May of 2007 (Step 1). Tr. 16. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "facet hypertrophy of the lumbosacral spine; degenerative disk disease without spinal or foraminal stenosis; obesity; borderline intellectual functioning; and mood disorder, not otherwise specified, with panic attacks." Tr. 16. The ALJ also found that Plaintiff has non-severe impairments, including "hypertension, diabetes mellitus, enlarged prostate, and diverticulosis." Tr. 16. The ALJ then found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (Step 3) Tr. 16. The ALJ specifically addressed and rejected in this portion of his opinion Plaintiff's claim that he satisfies the listing for a disabling mental impairment. Tr. 17-18. Next, the ALJ found that Plaintiff

---

[5]   While the ALJ lists "URB operator" as one of Plaintiff's previous occupations, the vocational expert appears to describe this occupation as a "VRB core operator." Tr. 49.

> has the residual functional capacity to perform light work . . . with the following limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours with the option to sit/stand at will; sit for 6 hours; no balancing; occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional exposure to extreme cold; and avoid all exposure to unprotected heights. The claimant would need simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes; casual interaction with the public and with co-workers; and workplace changes should be introduced gradually.

Tr. 18. The ALJ then found that Plaintiff is unable to perform his past relevant work. (Step 4) Tr. 24. The ALJ next found that, "[c]onsidering the claimant's age, education, work experience, and [RFC]," and after consulting with a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 24. The ALJ identified the following occupations as examples: "small parts packager," "wire cutter," and "marker, semiconductor wafers." Tr. 24; *see also id.* at 50-51. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from June April 13, 2007, through the date of this decision." Tr. 25.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents the following issues for this Court's consideration in determining whether the ALJ's decision is supported by substantial evidence: (1) whether the ALJ erred in failing to give greater weight to the opinion of Plaintiff's treating physician, and (2) whether the ALJ erred in relying on a consultative examiner's opinion regarding Plaintiff's mental impairment given that the examiner did not have certain school records pertaining to

Plaintiff at the time of the examination.

V.    **DISCUSSION**

    **A.    The ALJ's treatment of Plaintiff's treating physician's opinion.**

Plaintiff asserts that the ALJ reversibly erred in failing to give the opinion of Plaintiff's treating physician, Dr. Corbin, substantial weight. In his brief, Plaintiff describes the lengthy treatment relationship he has maintained with Dr. Corbin and the two opinions Dr. Corbin rendered, in August of 2007 and March of 2009, in which Dr. Corbin opined that Plaintiff was limited to a "very limited range of sedentary work" and that his capacity for even that level of work was "for less than an 8 hour workday." Pl.'s Brief (Doc. #12) at 9. Thus, Plaintiff claims, "the ALJ erred in giving dispositive weight to the opinion of the medical expert appearing, on the basis that he found it consistent with the other 'credible' evidence. Plaintiff submits that treating physician Dr. Corbin's opinion should be entitled to significant, if not controlling weight, as it has been rendered after a considerable period of time." *Id.* Defendant contends that the ALJ's decisions to give little weight to Dr. Corbin's opinion and to instead rely upon the consultative examination of Dr. Slavich and the testimony of the medical expert are supported by substantial evidence. Def.'s Brief (Doc. #13) at 6-8.

Dr. Corbin was Plaintiff's treating physician from at least late 1996 (Tr. 206) through the period of alleged disability onset. Dr. Corbin rendered two separate opinions to which, it is asserted, the ALJ improperly failed to give substantial weight. Both opinions are set

forth on a form "Physical Capacities Evaluation" (PCE) which was "drafted and submitted" by the law firm representing Plaintiff in these proceedings.  The first evaluation was completed on August 31, 2007, Tr. 316-318, while the second was completed on March 19, 2009, Tr. 356-358.  In the first evaluation, Dr. Corbin opined that the reasonable lifting expectation for Plaintiff would only be "5 pounds occasionally or less." Tr. 316.  Dr. Corbin further opined that Plaintiff could sit for only two hours out of the workday, and stand/walk for only one hour a day.  Tr. 316.  Dr. Corbin also stated that Plaintiff could never climb and balance or bend and stoop.  Tr. 316.  In assessing Plaintiff's pain, Dr. Corbin opined the "[p]ain is present and found to be intractable and virtually incapacitating to the individual[,]" and that physical activity causes Plaintiff "[g]reatly increased pain and to such a degree as to cause distraction from tasks or total abandonment of tasks."  Tr. 317.  Finally, Dr. Corbin opined that Plaintiff's "[d]rug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc."  Tr. 318.  The second evaluation completed by Dr. Corbin, in March of 2009, largely mirrors his earlier evaluation except to the extent it suggests some improvement in Plaintiff's condition.  For instance, in 2009, Dr. Corbin opined that Plaintiff could stand and walk for two hours out of the workday.  Tr. 356.  Dr. Corbin also opined that, unlike in 2007, Plaintiff could occasionally climb. Tr. 356.[6]  In other aspects, Dr. Corbin's second evaluation appears inherently self-contradictory.  For instance, on the one hand Dr. Corbin appears to indicate that Plaintiff's

---

[6] However, Dr. Corbin also indicated that Plaintiff could no longer perform "gross manipulation," which he could occasionally do in 2007.  Tr. 356.

8

pain has improved, finding that his "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work," Tr. 357, rather than "virtually incapacitating" as in 2007.  However, Dr. Corbin also indicates that in 2009 physical activity would cause Plaintiff an "[i]ncrease of pain to such an extent that bedrest and/or medication is necessary," rather than causing only "distraction," as in 2007.  Finally, Dr. Corbin indicates in 2009 that the expected side effects of Plaintiff's medications would "totally restrict[]" him and render him "unable to function at a productive level of work."  Tr. 358.

The ALJ considered Dr. Corbin's opinions and exhaustively recounted Dr. Corbin's findings in his opinion.  Tr. 21.  The ALJ also referenced a May 2007 treatment note (Tr. 198) of Dr. Corbin's in which he opined that Plaintiff was prevented from doing his "labor job" but that he "could do a sedentary job."  Tr. 23.  The ALJ ultimately found that "[i]n light of [Dr. Corbin's] opinion, in the course of treatment, that the claimant could perform sedentary work and the indication that, between the first and second PCE's, the claimant improved, I find Dr. Corbin's PCE's to lack substantial credibility."  Tr. 23.  Thus, the ALJ did not lend Dr. Corbin's opinions substantial weight.

When confronted with the opinion of a claimant's treating physician, the ALJ must afford it substantial and considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Bliss v. Comm'r of Soc. Sec.*, 254 F. App'x 757, 758 (11th Cir. 2007) ("An ALJ may reject the opinion of a treating physician, which ordinarily receives substantial weight, where 'good

cause' is established."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696 at *1 (11th Cir. Nov. 21, 2008). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight").

In this case, there was "good cause" for the ALJ's decision to discredit Plaintiff's treating physician's opinion, the ALJ clearly articulated the reasons for his decision to discredit such opinion, and those reasons are supported by substantial evidence. The ALJ determined that Dr. Corbin's opinions, as rendered on the PCEs, were not consistent with Dr. Corbin's own records. Indeed, Dr. Corbin's remark - at the last visit reflected in the record prior to Dr. Corbin's completion of the first PCE - that Plaintiff "could do a sedentary job" in May of 2007 (Tr. 198), conflicts with Dr. Corbin's subsequent opinion that Plaintiff could

only sit and stand or walk for a combined 3 hours out of the day, and that his pain is "intractable and virtually incapacitating." Tr. 316-17. There is no record of an intervening visit or examination by Dr. Corbin that supports the greatly enhanced limitations reflected in Dr. Corbin's first PCE. Likewise, the ALJ correctly noted that the subsequent PCE, as discussed above, suggests improvement in Plaintiff's condition and ability to work, yet also curiously indicates that physical activity would cause Plaintiff pain such that "bedrest and/or medication is necessary." Tr. 357. It is unclear how Plaintiff's overall experience of pain might improve from one PCE to the next, yet physical activity might cause greater pain despite such improvement. Unfortunately, neither the PCEs nor Dr. Corbin's treatment notes address this anomaly. It is for these reasons - conflicting assessments, anomalous findings, and lack of support in the record - that the ALJ ultimately found Dr. Corbin's PCEs to lack substantial credibility. Tr. 23.

The ALJ also discredited Dr. Corbin's opinion because it conflicted with other medical evidence of record, including the testimony of the medical expert that there are no objective medical records supporting Dr. Corbin's highly restrictive opinions and that Plaintiff may perform a limited range of light activity, Tr. 46-47, and the consultative examination of Dr. Slavich, which indicated that Plaintiff does not have "any significant impairments to preclude him from doing work related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling." Tr. 289. The ALJ found the opinions of the medical expert and Dr. Slavich consistent with the overall

objective medical evidence and worthy of significant weight. Tr. 22-23. The ALJ also found it relevant that Plaintiff "stopped working for reasons not related to the allegedly disabling impairments" in that he was "laid off" from his job and "he received 10 weeks of unemployment compensation." Tr. 24.

In sum, given the objective medical evidence before the ALJ, the well-supported opinions of the medical expert and Dr. Slavich, and the inherent inconsistencies affecting Dr. Corbin's assessments on the PCEs, the ALJ did not err in affording Dr. Corbin's opinions less than controlling weight.

### B.     The ALJ's reliance on the consultative psychological evaluation.

Plaintiff appears to claim the ALJ's reliance on the consultative examination of Dr. Kline was erroneous because Dr. Kline did not have Plaintiff's school records. In conjunction with this argument, Plaintiff relies on Dr. Corbin's remark in a treatment note that Plaintiff "really doesn't read at a high school level due to a learning disability." Tr. 198. Plaintiff asserts that, in light of Dr. Kline's failure to review Plaintiff's school records and Dr. Corbin's assessment of Plaintiff's ability to read, "the ALJ should have scheduled either a second consultative evaluation or a medical examiner with expertise in psychology. The ALJ failed to report the school records in his decision beyond reported grades and made no reference to Dr. Corbin's comment." Pl.'s Brief (Doc. #12) at 11. Defendant maintains that even though Dr. Kline had not reviewed Plaintiff's school records, he was aware of Plaintiff's history of learning problems from their interview and that Dr. Kline had sufficient

medical records to render an opinion about Plaintiff's effort on the intelligence testing administered by Dr. Kline. Hence, Defendant asserts, the ALJ rightly afforded some credibility to Dr. Kline's assessment. Def.'s Brief (Doc. #13) at 10. Defendant also argues that Plaintiff does not indicate how the ALJ's failure to address Dr. Corbin's remark about Plaintiff's learning disability "resulted in any prejudice to the determination of his case." *Id.*

It is clear from the record that the ALJ at least reviewed and considered the treatment note in which Dr. Corbin mentions Plaintiff's learning disability. Dr. Corbin's remark about the learning disability comes in the very same sentence in which he opined that Plaintiff can perform "a sedentary job." Tr. 198. The ALJ cited and discussed this note in his opinion. Tr. 23. While the ALJ did not specifically refer to the portion of the sentence dealing with Plaintiff's learning disability, Defendant correctly points out that Plaintiff has failed to demonstrate how such omission prejudiced the ALJ's decision. It is also clear that the ALJ at least reviewed Plaintiff's school records (Tr. 21), knew that Plaintiff was enrolled in special education classes during school (Tr. 31-32), and also knew that Plaintiff is able to read and write to some extent (Tr. 34). In short, Plaintiff does not demonstrate how Dr. Corbin's opinion that Plaintiff has a learning disability, a fact at least suggested in the evaluation of Dr. Kline, is not accounted for in the ALJ's decision to partially rely on Dr. Kline's opinion and in his ultimate determination that Plaintiff needs "simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes; casual interactions with the public and with co-workers; and workplace

changes should be introduced gradually." Tr. 18. Accordingly, Plaintiff's claim that the ALJ erred in failing to schedule a second consultative examination in light of Plaintiff's school records and Dr. Corbin's note is without merit.

## VI. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is supported by substantial evidence and is AFFIRMED. A separate judgment will issue.

DONE this 9th day of May, 2011.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE